and case number 19-2610 from the District of Northern Iowa, Derrick Bates v. Tyler Richardson et al. Very good. Mr. Frerichs? Thank you. May it please the court, this is the third time we've argued kind of this set of facts, so I had to kind of ask myself, what is it that maybe I haven't addressed before? I came to one conclusion, and that is the fundamental basis for both the district court's decision and the argument from the city defendants is basically an idiom. It's where there's smoke, there's fire. And I'm going to suggest that this idiom is nothing more than really a trope, because the idea that when we see one person and we suspect that one person of carrying a gun, we can suspect everybody in the area of having a gun. If that were true, if one person possessed a knife, then we should suspect everybody else of having a knife. If there's a stolen car in the neighborhood, we should suspect other stolen cars in the neighborhood. And I would suggest that this is kind of the fundamental basis of this case, because no one, not a single person, identified either Mr. Irvin or Mr. Bates as matching a description of anybody who carried a gun. That was a third person. And the justification by the court and by the city has been that, look, if this other person who had a gun that was in a dispute and that dispute may have included these two other people, ostensibly as victims, then everybody should be presumed to be armed and the police can then therefore act accordingly. And I suggest that that's basically a trope. It goes back to the way I look at it. It's called the broken window theory, a Stanford experiment, 1969, where they put a car in a nice neighborhood and they put a car in a bad neighborhood and the car got stripped in the bad neighborhood. Therefore, we must have some sort of an idea that in certain neighborhoods and certain And we should just expect that to happen in certain areas. Well, you're emphasizing, are you now distinguishing the frisk from the stop? Are you talking about the gun? That's not the whole case. I think it goes to all three, with all due respect, Justice Loken. I think it goes to the stop. I think it goes to the detention. I think it goes eventually to the arrest of Bates. But it clearly goes to the initial stop. That initial stop is based on a report where somebody says there's a guy with a white shirt that has a gun that's involved in an argument. The officer pulls up, sees a person that we've argued and tried to distinguish, white pants, blue shirt, that kind of thing. But it's clear that the officer's operating under the premise that there's somebody with a white shirt that's carrying a gun. A heavyset black male in a white shirt carrying a gun. The officer rounds the corner and doesn't see a heavyset black male. He sees Mr. Bates and Mr. Irvin. And in the district court decision, and even to an extent the briefs, they acknowledge that you can't tell under those circumstances that these two people are black. So the fact that the call said three people and a disturbance is irrelevant? The whole case turns on whether this gun aspect? I don't think that it's irrelevant. I think what's relevant, though, is what is the criminal activity complained of in the complaint? And that is not an argument. An argument's not a dispute. You can't reasonably say that two people who are not seen with a gun, who had no indication that they were carrying a gun, reasonably could be believed to be carrying a gun from the facts that were presented to the officer at the time. That's what I'm saying. Mr. Ferrix, when you look at the camera from the officer's viewpoint, after he gets the information from the woman who flags him down, how much distance is it between that point when she says, I think, just around the corner, he went around that way, and the time he sees and the point at which he sees Mr. Bates and Mr. Irvin? What's the distance there? Is that in the record? It is not in the record. It's approximately a block from the corner, or from where she's standing, I would say it's a block, a city block. But the idea to me is, look, if we're going to say that, if we're going to say that it's reasonable, and under these circumstances, even looking back at the district court's decision, they're indicating, well, these could have been victims. Mr. Bates, in particular, could have just been the third person who wasn't described. Well, if there's an argument between three people and one has a gun, then Mr. Bates is a victim. He's not reasonably believed to be a perpetrator of a crime. None of the cases cited by the district court or the state say it's reasonable to believe that a person who's seen with somebody who's got a gun also has a gun. And the Sykes case is a little bit different in that, in a laundromat, a woman says it's one of those two specific people that has a gun. Also, it seems to me this case turns on the command to stop. Of course, the police can seek to have a consensual discussion with anybody on the street any time. Sure. And that was superseded by the command to stop. But then what happens after the command to stop, it seems to me, it was reasonable. But there isn't enough focus to me in your argument on the command to stop. Was that a Fourth Amendment violation or not? To ask them to stop was not. And even though the officer testified in his deposition... No, no, no. Wait, wait. The whole analysis turns on it being a command. I understand, but the officer... So why didn't you answer the question? Well, I... Because when you said, I anticipated you say, yes, the command was a Fourth Amendment violation. And then I'd want you to try out some cases on that. Yeah, and again, it is a fundamental Fourth Amendment violation to tell two people that don't match the description that there's reasonable suspicion that you're involved. So when I say I'm going to ask you my next question will be for cases, and your answer is, well, it's fundamental. I don't have to have any cases. The whole world knows. Sure. What's your best case? Flowing from Justice White's opinion where anybody can be asked to respond to a question on the street, but of course, people have the right to walk away. Right. Now, these chaps walked away in a situation where the police officer thought that there was a reasonable basis to do more than just request. So what's your best case that that officer is not entitled to at least a qualified immunity for that decision? Because under Terry, the idea is it has to be reasonable. Of course. I mean, the command has to be reasonable, and the command has to be based on a reasonable suspicion. Counsel, do you not have a case at your fingertips on just my question? A command to stop that's challenging? Rebuttal. Pardon? I'll try to get one in rebuttal, but no. Okay. All right. Thank you. I understand the argument, but I've never encountered a whole case turning on that question. And to me, again, all of the issues turn on this idea that, look, these two gentlemen, there's no reasonable suspicion to believe they were involved in any criminal activity. The only thing that's reasonably suspected is that they were present when some crime may have occurred. And that does not justify the type of force and command that was used to justify this stop. The commensurate level of force, of course, has to be with the harm that's being prevented. So I think, ultimately, this case boils down to the reasonableness. And that reasonableness cannot be separated from the fact that there's no reasonable basis to believe these two men were involved in any criminal activity. Mr. Farris, does your argument apply equally to both Mr. Bates and Mr. Irvin? I mean, I understand that there's been no one who ever identified a person in a red shirt being involved, either from the 911 call or the woman flagging them down. But I think in the 911 call, there was an identification of someone in all blue. I think it was all blue, at least all dark-colored clothes. Is there any difference in your argument and your position between those two individuals? No, because neither one of them was identified as participating in any criminal activity. The only criminal activity that was identified was the man in the white shirt. So, again, I'd like to reserve the balance of my time. Thank you. Ms. Jacoby? May it please the court, counsel, for appellants, I am Liz Jacoby. I represent the defendant appellees Tyler Richardson and Jared Juppin, who are the police officers present at the time of the events in question, along with Police Chief Wayne German, in both his individual and official capacities, and the City of Cedar Rapids. On behalf of our clients, we ask that this court affirm in each and every respect the very well-reasoned and thorough decisions by Honorable District Court Judge Williams. I should start by saying that I disagree with the notion that our position rests on a trope. In point of fact, the reasonableness analysis, at its core, does require a measure of common sense judgment about human behavior. That's a well-established principle in these cases. And in the particular facts of this case, the type of incident, I think we all have seen, can result in tragedy. This was not simply possession of a weapon. It was possession of a weapon in the context of an argument. And I take issue with the idea that arguments should be distinguished from disturbance. The computer-aided dispatch... Can we talk a little bit about the reasonableness that criminal suspicion, that criminal activity is afoot, and that the perpetrators of that criminal activity are Irvin and Bates, right? Because it's pretty clear that that's what Judge Williams says. Judge Williams says that the court is persuaded that the officers had a reasonable belief that the males referenced by the dispatchers were involved in criminal activity. And that's a direct quote. Now, what evidence? You know, as I read Judge Williams' opinion, he doesn't go through and say what that evidence specifically is. He doesn't say suspect 1 did A, suspect 2 did B. A and B, when combined with C displaying the weapon in the course of this discussion, that's a reasonable and articulable suspicion. We have right for the Terry stop. Well, all of a sudden, it's no longer maybe perhaps a Terry stop, because they keep walking. All of a sudden, there's a command given. So at that point, there's Fourth Amendment activity, and you need to have some sort of reasonable belief that there's criminal activity afoot, and these people are involved in it, don't you? Or have I missed something? And if so, what are the facts that give rise to that reasonable suspicion? Thank you, Your Honor. I believe you may have framed more than one question, and if I don't get to both or any of them, I hope that you'll point that out to me. So, again, under jurisprudence concerning Fourth Amendment reasonableness, it is clear that officers, that the viewpoint of the court, is not necessarily to be that of the officers on the scene, but that of a reasonable officer who is trained and necessarily then has certain experience. So Judge Williams, in his decision, wasn't necessarily going by what these particular officers thought, but by what a reasonable officer could infer based on training and experience, and there is evidence that officers are often trained that where, and to Mr. Frerichs' point, there is a certain amount of inference, one could go to the extreme and call it and say that it's, or characterize it as being where there's smoke, there's fire. But given the purposes or the duties that we place on our officers to not only react to offenses, but also to try to prevent criminal conduct, it is absolutely reasonable, some could argue necessary, that an officer approach a weapons disturbance with the assumption that there may be more than one weapon. And so while there may not have been, the salient point is that there could have been and very well could have been. Counsel, let me come at it this way. Do you have any cases that attempt to draw the line of when a police officer makes a reasonable request for a discussion or whatever, an inquiry on the street, and the person walks away, when can the officer say, you can't walk away in this situation, stop? When is, now is that the same, is it just the same reasonableness inquiry, or is there, there should be case law exploring that, and I'm not hearing it from either of you. Yes, I believe Sykes, for instance, although there was initially a request, in that situation, there was nothing more than a suspicion of possession of a weapon. And it was proper to command a stop. So in this case, once there was reasonable suspicion of the individual. You both want to make this a gun case. It doesn't seem to me that's the totality of the circumstances that the officer Richardson was dealing with. He was told about a, there was a call about a disturbance, domestic in a house or on the street or what. At what point now, when he's been told by a woman a block away, that he's been given some more, at what point can he do more than request a conversation? The third person later on, he requested a conversation, the person complied, and everything proceeded as it should on the street. So is there no case law going into this? I don't know that there's a case with the precise facts. I don't bring one to mind at the moment, your honor. I think though the salient point is that once there was reasonable suspicion, a command is proper. What was it? That was Judge Erickson's question. I haven't heard an answer yet. What was that evidence? The evidence was that there were three individuals involved in what, apparently to the caller was a disturbance, and that's what appeared on the, from dispatch. So a disturbance, it actually said weapons disturbance. And I think we all know from, just one could take judicial notice that those often result in tragedy. So again, once there was reasonable suspicion. So anyone on the streets at that point in time can be treated the way Richardson treated these two? No, and that is a mischaracterization by my opposing counsel to suggest that we are trying to make a firearms exception, when in fact we are not. It was reasonable suspicion in this case was based on the call, which included in turn location of several sorts, physical descriptions, and then very importantly, once he arrived on scene, there was proximity in time and space, both to the disturbance that was reported, the volatile, potentially dangerous disturbance, and proximity in space to that disturbance, plus there was proximity to the person who flagged him down. You know, time and space, that's what I said. So anyone on the street, anyone on the street there at that time can be treated the way  No, they'd also have to meet, or reasonably meet the description. Did they? Yes. Not the man with the gun. But Your Honor, then we're going back to the question, respectfully, we're going back to the question about whether it's reasonable for a police officer to infer an additional weapon. We can't rely on the call. What was the basis for suspecting that these two were the other two of the three? The clothing description and the proximity times two or four. I thought the clothing was all messed up. No, I don't regard it that way, Your Honor. I think Judge Williams does a fine job, obviously, I think that, of describing the various, or the aggregate description that was available to officers Richardson and Juppin, one of which was all dark clothing. I think Judge Kelly mentioned that. But not as to the other person, right? I mean, there's no description. Correct. Sort of Judge Williams said, well, because we don't have a description of the other person, then there's another person with a guy in blue, therefore it could be him. I mean, is that enough? Well, I don't think Officer Richardson had the luxury of stopping just one of the two of them. I mean, he had to issue a command. It is reasonable for someone to believe that, given the proximity, again, of Mr. Bates, not only to the disturbance but also to the bystander who flagged him down. His nearness, I think Sykes also stands for this, his nearness to an individual who did meet the aggregate description, make it not unreasonable for constitutional purposes that Richardson would stop both of them at the same time. So I'm not sure if I addressed all of Judge Erickson's questions. I would like to make sure I do so. If not, I'd like to proceed and focus on a few of the… There's an aspect of this that Mr. Prerich is kind of inferring that you rounded up the usual suspects, that they happen to be in the area, that they happen to generally meet some description, one of them sort of closer, the other one, there is no physical description, and that all you really have is description of disturbance, chubby black fellow displayed a firearm, and that from that we infer that everybody is somehow involved in a disturbance that is criminal in nature and that we have the right to give a command to stop as opposed to just a Terry stop. Why is that? I mean, what pulls that all together? I mean, I keep coming back to looking at what those officers knew. What they knew is they have one suspect who might meet the physical description because we've got dark clothing, white stripes, black clothing, some white, and maybe that fits, all right? But we have no physical description of the other person, and they just happen to be, other than they're all three black, and the video does not clearly establish that these gentlemen were persons of color. Now, maybe the officers had a better view and they saw something that you can't see on the video, but you sure can't tell that they are of color in the video, right? And so you've got two guys, one of whom is wearing basically a track suit with white stripes on it, and that gives you reason to stop. Okay, I'm going to try to break that down if I may. It has nothing to do with the neighborhood. It has nothing to do with usual suspects. It has everything to do with, first of all, I don't think we've addressed this yet, there were no other individuals on the street at the time Officer Richardson turned the corner and made visual contact of both plaintiffs. Second of all, the dark top had a white stripe, and so I'm going to hearken back to what the bystander said, which reasonably could have been construed as a white and blue top. He had dark pants. Okay, so I think I'm not sure which of your questions to try to address first, but I also believe that the law allows an officer to make a command in order to effect a Terry Stop. So I don't think that there's a distinction. I don't think that you have to make a request to make a Terry Stop. A request is just not a consensual encounter, whereas a Terry Stop is investigatory, which is the purpose, the very purpose they wanted to rule in or out. Counsel, a request is not a Terry Stop. A command to stop is. The command is what made it a Terry Stop. Agreed. I thought Judge Erickson was asking about what allowed for us to make a command instead of just asking them to stop, and I was trying to address that. I may have sloppily said that. What I'm really trying to get at is this, is that where's the reasonable suspicion that's articulable to command these people to stop and to create a Terry Stop? What are the facts that give rise to that? Those facts consist of the location and time, the general matching of the aggregate description, and the fact that they were just around the corner and no one else was just around the corner. As to the offense, the basis for assuming or not assuming, but suspecting that more than one person was involved in an offense arises out of an officer's reasonable inference based on the fact that if there was a disagreement, multiple people were disagreeing with one another. I see that my time is up, but I certainly want to address any additional questions, and I ask that the court consider our written brief, which it took much more time to provide than making arguments. I didn't understand the last comment. I'm sorry, Your Honor. We don't want more briefing if that's what you're asking. Not at all. I know you don't. I wouldn't expect you to, but I was just remarking that I think that in the 15 minutes, I probably didn't articulate as well what I believe I articulated in the briefing. Thank you very much. We understand your brief. The argument is just elaborating on the brief. Is there a rebuttal time for Mr. Frerichs? Yes. Are you ready for me? Yes. Justice Slocum, I want to go back to you and apologize, but basically, I think I may have misunderstood your question, and maybe I still do. Terry Stop is reasonable suspicion. Once it goes beyond a Terry Stop, with the guns and the handcuffs, then it's a probable cause standard, and a Terry Stop changes based on the nature of the instance, and that case is Williams versus Decker, relatively recent. That's not the only case. That's a different issue. That's the arrest issue. Right. What I'm saying is that discusses the progression of a consensual stop to a Terry Stop to an arrest, and the different standards that would apply, and the application at the point that we think get on the ground in handcuffs is an arrest, and we think that, because there's no reasonable suspicion, it was asked. Council, this is rebuttal, and that wasn't Eric. I mean, the arrest issue is fully briefed. Okay. There are a zillion cases that talk about, you know, about the draw that line. That's not the line I was asking about. Okay. Well, I guess what I'm getting at is this. The city is relying on the inference from the officer, and we think that inference is basically an inference that says, well, there's one more when there's got one gun, there's more, and there's nothing. There's no empirical evidence. There's no police training that they've cited. There's nothing that we suggest supports that. And I go back to the fact that it's merely a trope. I mean, under those circumstances, if somebody stole, if there was a report of a stolen car, they could stop all cars in the area because there's a stolen car in the area. And when there's one, there's more, or to elaborate even further, my neighbor has a turban on and he speaks funny and he's got a long beard where there's smoke, there must be fire. And those are the kinds of things that I think. Counsel, counsel, you know, you're, you're just where there's one gun, there's more that that's, that's not the stop. That's the frisk issue. What? And that's not the stop. That's not the stop issue. The stop was a totality stop. And the obvious concern from the bystanders report is that guns may have been involved, one gun involved in the, in the disturbance. But the stop is for the totality. And then the frisk is a separate question. Is there, is there a basis to, to at least pat these fellows down? Two completely different issues. There's no, there's not just one trope at play here. I agree, but I think that trope plays across all of those lines. I don't, I understand the distinction of all courts. No, this is reasonable suspicion that justifies a frisk when there's a Terry stop. It's much more serious and different than, than the trope you're talking about with regard to stop. And when asked, what is it that they relied on for the reasonable suspicion? She indicated their training and experience, which is where there's one gun, there's more. In addition, she said, well, the proximity. Of course you say that. When you're going to, when you're going to pat down, when you're going to pat down two, three, four people that you, that have been stopped with a basis to suspect that guns may be in play, you pat them all down. That's officer safety. That's how they're trained. Right. But that, that that's not really what happened here. We, we can tell us the whole nature that this just simply started and stopped as a Terry stop. I mean, they, they approached these two at gunpoint. They were victims, arguably. I mean, the risk. Time's up. Just wrap it up. So the risk these two people face as that police officer approached them was not the risk to their lives. It's not wrapping it up. Counsel time. Time's up. The case has been well briefed and argued and we'll take it under advisement.